UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ERA FRANCHISE SYSTEMS, LLC f/k/a
ERA FRANCHISE SYSTEMS, INC.,

                              Plaintiff,                             **REPORT AND**
                                                            **RECOMMENDATION**
                        -against-                                 CV 07-5319 (JS)(WDW)

KINGS REALTY #1, INC. and
KEVIN J. HANSON,

                              Defendants.
------------------------------------------------------------X

**WILLIAM D. WALL, United States Magistrate Judge:**

       This matter has been referred to the undersigned by District Judge Seybert for the purpose of issuing a report and recommendation as to the damages and other relief to be awarded to the plaintiff on the default of the defendants. Plaintiff ERA Franchise Systems, LLC ("ERA") asks that the court award it compensatory damages plus interest and attorneys' fees, as well as injunctive relief and an order directing defendants Kings Realty #1, Inc. ("Kings") and Kevin J. Hanson to submit to an audit. For the reasons set forth below, the undersigned recommends that the relief sought by plaintiffs be granted.

BACKGROUND

       The factual background of this lawsuit is set forth in the Complaint. ERA, a Delaware corporation with a principal place of business in New Jersey, is a real estate franchise system. Compl. ¶¶1, 7, Docket Entry ("DE") [1]. ERA has registered various trademarks, service marks and logos (the "ERA® Marks") and has the exclusive right to use and license the marks. *Id.* ¶8. ERA allows its franchisees to use the ERA® Marks to "identify the origin of their real estate brokerage services." *Id.* ¶12.

Defendant Kings is a New York corporation, and its president is defendant Kevin J. Hanson. *Id.* ¶¶2-3. On August 1, 2005, ERA entered into a Real Estate Franchise Agreement with Kings for a real estate brokerage office located at 416 Hempstead Avenue, West Hempstead, New York (the "Hempstead location"). *Id.* ¶16. Pursuant to this agreement, Kings was to operate an ERA real estate brokerage office at the Hempstead location for 10 years, and was permitted to use the ERA® Marks in association with that operation, provided that Kings "fully and timely performed its obligations under the Hempstead Agreement." *Id.* ¶17.

ERA and Kings entered into a separate agreement providing for the operation of an ERA franchise at 67-03 Roosevelt Avenue, Woodside, New York (the "Woodside location"). *Id.*¶¶25-26. The Woodside agreement also was for a 10 year term and permitted Kings to use the ERA® Marks. Each agreement provided that in the event of a termination, Kings was required to immediately cease use of the ERA® Marks at the location covered by that agreement. *Id.* ¶¶18, 27.

In addition to the Hempstead and Woodside Agreements, defendant Kevin Hanson executed a Guaranty of Payment and Performance as to each location. Pursuant to those guaranties, Hanson personally guaranteed payment of all franchise fees and other fees, including attorneys' fees, due under both the Hempstead and Woodside Agreements.

Kings failed to perform its obligations under both the Hempstead and Woodside Agreements by failing to report transactions and by being delinquent in the payment of fees. *Id.* ¶32. After Kings was put on notice as to its default at the Woodside location, ERA and Kings entered into a Mutual Termination Agreement and Release (the "Termination Agreement") dated November 27, 2006 regarding that location. *Id.* ¶34. Pursuant to the Termination Agreement,

Kings agreed to discontinue use of all ERA® Marks and destroy all office materials containing those marks. *Id.* Kings also agreed to remove ERA signs posted at the Woodside location. *Id.* ¶35. Despite this agreement, Kings has failed to "de-identify" its Woodside location and has continued to use ERA® Marks in connection with its real estate services at that location. *Id.* ¶¶37, 40-41.

As to the Hempstead location, ERA advised Kings of its default by letter dated March 19, 2007, and when Kings failed to cure the delinquencies, ERA terminated the franchise effective May 22, 2007. *Id.* ¶¶42-43. ERA advised Kings of its post-termination obligations to cease and desist from using ERA® Marks and to pay all outstanding fees. *Id.* ¶44. Kings failed to "de-identify" the Hempstead franchise and have continued to use the ERA® Marks. *Id.* ¶¶45, 47.

ERA filed the complaint in this case in December 2007, alleging a violation of the Lanham Act regarding defendants' continued use of the ERA® Marks, and various breach of contract causes of action. After defendants failed to answer or otherwise respond to the complaint, ERA moved for a default judgment, which was granted by Judge Seybert, who referred the damages determination to the undersigned for report and recommendation. After plaintiff changed attorneys, incoming counsel was given the option to supplement plaintiff's papers. Plaintiff has submitted supplemental papers in support of its damages claim, but no papers have been filed by defendants.

## DISCUSSION

A default constitutes an admission of all well-pleaded factual allegations in the complaint, except those relating to damages. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). A default also "effectively constitutes an

admission that the damages were proximately caused by the defaulting party's conduct: that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged." *Cablevision Sys. New York City Corp. v. Abramov*, 980 F. Supp. 107, 111 (E.D.N.Y. 1997). The movant need only prove that the "compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." *Greyhound*, 973 F.2d at 159. The amount of damages can be determined without a hearing as long as the court satisfies itself, through review of documentary evidence or affidavits, that the amount is reasonable. *See Transatlantic Marine Claims Agency v. Ace Shipping Corp.,* 109 F.3d 105, 111 (2d Cir. 1997).

On its motion for default judgment, the plaintiff seeks entry of judgment providing for payment of past fees plus interest and for payment of lost future fees, and an order permanently enjoining defendants from using the ERA® Marks and ordering defendant Kings to produce its books and records for an audit for the purpose of determining additional damages.

**I. Injunctive Relief**

In continuing to use the ERA® Marks beyond the termination of the franchise agreements, plaintiff contends that in addition to breaching those agreements, defendants have violated several provisions of the Lanham Act. Section 32 of the Lanham Act provides, in pertinent part, that:

> Any person who shall, without the consent of the registrant – (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant. . . . .

15 U.S.C. §1114(1)(a). Section 43 of the Lanham Act further provides for civil liability for a

<br>

person who, in commerce, uses any symbol "or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which – is likely to cause confusion, or to cause mistake, or to deceive as to affiliation. . . or as to the origin, sponsorship, or approval of . . . goods, services, or commercial activities by another person." 15 U.S.C. §1125(a)(1)(A). The owner of an established mark that has been infringed upon is entitled to an injunction against another person's commercial use of that mark. 15 U.S.C. §1125(c).

Plaintiff ERA claims that the acts of defendants in marketing and promoting their real estate brokerage services with ERA® Marks at both the Hempstead and Woodside locations constitute a false designation of origin, false and misleading description of fact, and false and misleading representation of fact, that is likely to cause confusion, mistake or deception as to the affiliation of Kings' offices with ERA in violation of the Lanham Act. Compl. ¶54. Plaintiff seeks an order that enjoins use of the ERA® Marks, directs the removal of signage at the locations and on the internet, orders defendants to account for their profits, and grants compensatory damages, interest, treble damages, attorneys' fees and costs, and prejudgment interest. *Id.* ¶59.

"To obtain a permanent injunction in a trademark action, a party 'must succeed on the merits and show the absence of an adequate remedy at law and irreparable harm if the relief is not granted.'" *Patsy's Italian Rest., Inc. v. Banas,* 575 F. Supp. 2d 427, 464 (E.D.N.Y. 2008) (quoting *Roach v. Morse,* 440 F.3d 53, 56 (2d Cir. 2006)) (internal quotation omitted).[1]

---

[1]There is some split in this district as to the appropriate standard to use when determining whether a permanent injunction should issue in a trademark infringement case. One court has used the standard enunciated by the Supreme Court in a patent case and applied it in a trademark

5

Although plaintiff did not specifically address these factors in its papers, the facts presented in this default context are sufficient for the court to determine plaintiff's entitlement to injunctive relief. Accordingly, the court will consider the factors in turn.

    A. Success on the Merits

To establish a claim under Section 32 of the Lanham Act, plaintiff must show that defendants "used plaintiff's valid trademark in a way that is likely to confuse consumers as to the source of the product." *Dunkin' Donuts, Inc. v. Northern Queens Bakery, Inc.,* 216 F. Supp. 2d 31, 43 (E.D.N.Y. 2001). To prove a violation of Section 43 of the Lanham Act for trade dress infringement, plaintiff must show that "(1) its trade dress is distinctive and (2) there exists a likelihood of confustion between its product and the alleged infringer's product." *Id.*

Plaintiff ERA has stated that the ERA® Marks have been registered and that those registrations "are in full force and effect, unrevoked, uncancelled, and incontestable." Compl. ¶9. The "existence of a trademark registration is prima facie evidence of a valid trademark." *Frank Brunckhorst Co. v. G. Heileman Brewing Co.,* 875 F. Supp. 966, 975 (E.D.N.Y. 1994). In addition to their registration, plaintiff claims that the ERA® Marks "distinctly designat[e] ERA real estate brokerage services as orginated with ERA" and that those marks "are among the most famous trademarks in the United States." Compl. ¶¶13, 15.

---

context. *See Microsoft Corp. v. AGA Solutions, Inc.,* 589 F. Supp. 2d 195, 204 (E.D.N.Y. 2008) (citing *eBay v. MercExchange, LLC,* 547 U.S. 388, 391 (2006)). Another court has found that since the Second Circuit has not held that the *eBay* case's "slightly more stringent standard" should be applied in a trademark action, lower courts in this circuit should use the Second Circuit's "most recent articulation of the standard for imposing injunctive relief in trandemark cases." *Patsy's Italian Rest.,* 575 F. Supp. 2d at 464, n.25 (citing *L. & J.G. Stickley, Inc. v. Cosser,* 255 Fed. Appx. 541, 543 (2d Cir. 2007)(summary order)(quoting *Roach,* 440 F.2d at 56)). The undersigned has adopted the latter approach, but notes that the result in this case likely would be the same under either standard.

As to the likelihood of confusion, defendants continue to operate real estate brokerages at the two locations and are holding themselves out to be ERA franchises by using the exact trademarks held by ERA. "There is a great likelihood of confusion when the infringer uses the exact trademark as the plaintiff." *Dunkin' Donuts,* 216 F. Supp. 2d at 44 (internal quotations and citations omitted). Observing that such cases are "open and shut," it has been noted that "defendants' status as a holdover franchisee makes the Second Circuit's eight-factor test set forth in *Polaroid Corp. v. Polaroid Electronics Corp.,* 287 F.2d 492, 495 (2d Cir.1961), not applicable." *Id.*

The court finds that plaintiff has shown that it has valid and distinctive trademarks, and that the likelihood of confusion here is substantial. Accordingly, plaintiff has demonstrated actual success on the merits of its claim under the Lanham Act.

B. Absence of an Adequate Remedy at Law and Irreparable Harm

ERA states that the defendants' continued use of the ERA® Marks dilutes the distinctive quality of those marks and that defendants' misrepresentations will tarnish ERA's goodwill and business reputation. In cases such as this where a franchisee continues to use trademarks without the franchisor's permission, courts have found that "damages to a business's goodwill as a result of unauthorized trademark usage are not readily quantifiable and, thus, constitute irreparable harm." *Dunkin' Donuts,* 216 F. Supp. 2d at 40; *see also Church of Scientology Int'l v. Elmira Mission of the Church of Scientology,* 794 F.2d 38, 42 (2d Cir. 1986) (when a licensor proves unlawful use of a trademark by former licensee and consumer confusion by that use, "a finding of irreparable harm is automatic"). Plaintiff's argument in favor of injunctive relief is "compelling" because "after a license has been revoked, there is an increased danger that consumers will be

confused and believe that the former licensee is still an authorized representative of the trademark holder." *Sunward Elecs., Inc. v. McDonald,* 362 F.3d 17, 25 (2d Cir. 2004). In light of plaintiff's undisputed factual allegations, the court finds that ERA has demonstrated irreparable harm absent an injunction and recommends that a permanent injunction issue against defendants.

## II.  Audit

ERA claims that under the Lanham Act, it is entitled to damages in the amount of any profit that defendants have derived from their unauthorized use of the ERA® Marks. Plaintiff notes, however, that it is currently unable "to know the exact amount of ill-gained profits Defendants have collected during their period of unlawful use of the ERA® Marks." Pl. Mem. at 14. Accordingly, plaintiff seeks an order permitting it to conduct an audit of Kings' books and records.

Pursuant to the both the Hempstead Agreement and the Woodside Agreement, ERA is entitled to conduct an audit of Kings' books and records. *See* Hempstead Agreement ¶13.2.1; Woodside Agreement ¶13.2.1**.** Under each agreement, ERA's right to conduct an audit extends for a "period of three years following any termination" of the agreement. *Id.* ¶13.2. The Woodside Agreement was terminated in November 2006, and the Hempstead Agreement was terminated in May 2007. Under the terms of each agreement, ERA maintains the right to conduct an audit of Kings' books and records as to that location. Accordingly, the undersigned recommends that the court enter an order directing defendant Kings to submit its books and

records for an audit.[2]

### III. Compensatory Damages

Pursuant to the Hempstead Agreement, ERA seeks to recover compensatory damages owed to it in the form of "Royalty Fees, NAF [National Advertising fees] contributions and referral fees, on transactions pending at the time of . . . termination." Hempstead Agreement ¶16.7.1.[3] Plaintiffs have submitted affidavits regarding the past due fees owed from Beth Klepar, Vice-President of Financial Services and Audit for ERA, Klepar Decl., DE [9-5] and from Jacqueline Bertet, Senior Director of Financial Services for ERA. Bertet Decl., DE [20].

According to Klepar, the minimum amount of past due fees owed by Kings for the Hempstead location is $14,542.00. Klepar Decl. ¶30. The Bertet Declaration provides greater detail as to the origin of this number, how it was calculated, and attaches documentary support. Accordingly, the court finds that plaintiff has established its entitlement to $14,542.00 in past due fees under the Hempstead Agreement, and recommends an award in this amount.

Pursuant to the Agreements, ERA is also entitled to "lost future profits" equaling the amounts Kings "would have been obligated to pay as Royalty Fees, NAF contributions, and any other fees due . . . from the date of early termination through the Expiration Date, had there been no early termination." Hempstead Agreement ¶16.7.2. Acknowledging that such lost future

---

[2]The court notes, however, that any lost profits identified by the audit may be offset by the lost future profits owed to plaintiff under the franchise agreement, since generally, a plaintiff may not recover twice for the same injury. *See Computer Assoc. Int'l v. Altai, Inc.,* 982 F.2d 693, 720 (2d Cir. 1992); *see also Bowers v. Baystate Techs, Inc.,* 320 F.3d 1317, 1327 (Fed. Cir. 2003) (stating in a copyright infringement case that no double recovery is allowed where "the breach of contract damages arose from the same copying and included the same lost sales that form the basis for the copyright damages").

[3]Plaintiffs have not sought compensatory damages due under the Woodside Agreement.

profits would be "impracticable or extremely difficult to calculate," the Agreements provide for a method of calculating the amount of lost future profits. *Id.* According to Klepar, Kings owes ERA $107,973.00 in lost future fees for the Hempstead location. Klepar Decl. ¶32. Plaintiffs again provide further support for this amount, including the precise method by which this amount was calculated. *See* Bertet Decl. Thus, the court further finds that plaintiff has established its entitlement to $107,973.00 in lost future profits under the Hempstead Agreement, and recommends an award in this amount.

The Hempstead Agreement further provides for the payment of interest on past due fees at the rate of 18% per annum simple interest, or 1.5% per month. Hempstead Agreement ¶11.2. Although ERA is entitled to interest calculated from the due date of each individual overdue fee, it seeks only interest from May 23, 2007, the date of termination of the Hempstead Agreement. Bertet Decl. ¶11. Calculating the interest owed from May 23, 2007 through the end of the current month, February 2009, plaintiff is entitled to $4,646.16 in interest.

Hanson executed a personal guarantee for each agreement. *See* Hempstead Agreement, p.38; Woodside Agreement, p.38. Pursuant to the Hempstead Guaranty, Hanson has personally guaranteed payment of all amounts owed by Kings under the Hempstead Agreement and thus, is personally liable for the damages determined herein.

## IV. Attorneys' Fees & Costs

The Agreements provide for the recovery of attorneys' fees if ERA incurred such fees while trying to prevent Kings from infringing the ERA® Marks. Compl ¶22, 29; Hempstead Agreement ¶16.6; Woodside Agreement ¶16.6. Having brought suit against defendants seeking to halt infringement of the marks, ERA seeks "attorneys' fees incurred by us in the enforcement

of our rights concerning the Marks; and the costs and disbursements of bringing the enforcement action." *Id.*

The party seeking reimbursement of attorneys' fees bears the burden of proving the reasonableness and the necessity of hours spent and rates charged. *See generally, N.Y. State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136 (2d Cir. 1983). A fee application must be supported by contemporaneous time records that describe with specificity, by attorney, the nature of the work done, the hours expended, and the dates on which the work was performed. *Cruz v. Local Union No. 3 of the IBEW,* 34 F.3d 1148, 1160-61 (2d Cir. 1994). ERA has submitted contemporaneous billing records supporting its request for $9,152.50.00 in attorneys' fees expended through February 29, 2008. Those records show work performed by four individuals and indicates the billing rates for those individuals as follows:

| Performed By | Title | Rate | Hours | Total |
| --- | --- | --- | --- | --- |
| D.K. Winters | Partner | $425 | 1.30 | $552.50 |
| D.K. Winters | Partner | $480 | 1.10 | $528.00 |
| J.A. Guidea | Associate | $345 | 14.10 | $4,864.00 |
| J.A. Guidea | Associate | $385 | 3.20 | $1,232.00 |
| J. Teig | New assoc. | $275 | 2.00 | $550.00 |
| N.E. Ortiz | Paralegal | $210 | 4.60 | $966.00 |
| N.E. Ortiz | Paralegal | $230 | 2.00 | $460.00 |

*See* Winters Decl., Ex. B, DE [9-2]. The court has reviewed those records and finds that the level of detail is sufficient to meet the requisite standard.

The affidavit accompanying the billing records does not, however, provide any information about the level of experience of these individuals so as to assist the court in determining whether the rates charged are reasonable. The court cannot find, on the record before it, that the rates charged are within "what a reasonable, paying client would be willing to

11

pay." *Arbor Hill Concerned Citizens v. County of Albany,* 522 F.3d 182, 184 (2d Cir. 2008). The undersigned recommends that the requested fees be reduced by 10%, and finds that the resulting fee award of $8,237.25 to be a presumptively reasonable fee.

ERA is also entitled to costs pursuant to both the Hempstead Agreement and the Woodside Agreement, *see* Hempstead Agreement ¶16.6, Woodside Agreement ¶16.6, and has established entitlement to an award of costs in the amount of $564.60, as set forth in the documentation submitted in support of plaintiff's damages claim. Winters Decl., Ex. B. Accordingly, the undersigned recommends an award of attorneys' fees and costs in the amounts of $8,237.25 and $564.60, respectively.

## CONCLUSION

The undersigned recommends plaintiff ERA be awarded compensatory damages, interest, attorneys' fees, and costs totaling $135,963.01, broken down as follows:

- $14,542.00 in past due fees;

- $107,973.00 in lost future profits;

- $4,646.16 in interest on the past due fees through February 28, 2009, plus additional per diem interest of $7.17 until the date of entry of judgment;

- $8,237.25 in attorneys' fees; and

- $564.60 in costs.

It is further recommended that a permanent injunction issue, and that the court enter an order directing Kings to submit to an audit to determine the amount of profit that defendants have derived from the unauthorized use of the ERA® Marks. Upon completion of the audit, plaintiff

may apply to the court for an order directing defendants to pay that amount[4], plus treble damages and attorneys' fees and costs.

**OBJECTIONS**

A copy of this Report and Recommendation is being sent to counsel for the plaintiff by electronic filing on the date below. Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to the undersigned within 10 days. Failure to file objections within this period waives the right to appeal the District Court's Order. *See* 28 U.S.C. §636 (b) (1); Fed. R. Civ. P. 72; *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
February 23, 2009

        /s/ William D. Wall
       WILLIAM D. WALL
       United States Magistrate Judge

---

[4]At that time, plaintiff should be prepared to address the extent to which, if any, such amounts must be offset by the award of $107,973.00 in lost future profits under the franchise agreements recommended herein.